# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# OWENSBORO DIVISION

CIVIL ACTION NO.: 4:09CV-15-M

STATE AUTO PROPERTY AND
CASUALTY INSURANCE COMPANY            PLAINTIFF

v.

LORI HARGIS                     DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon a motion by the defendant, Lori Hargis, for summary judgment [DN 27]. Fully briefed, this motion is ripe for decision.

## I. INTRODUCTION

This controversy arises out of a contract dispute between the plaintiff, State Auto Property and Casualty Insurance Company ("State Auto"), and its insured, Hargis. On or about October 11, 2007, State Auto issued a homeowner's insurance policy providing coverage for Hargis's property located at 7260 Rucker Road #1 in Henderson, Kentucky. (Compl. ¶ 9; Answer ¶ 9.) In pertinent part, the policy contains the following provisions related to intentional loss and fraud:

> **8.**  **Intentional Loss**
> a.  Intentional Loss means any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.
> In the event of such loss, no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss.
>
> **Q.**  **Concealment or Fraud**
> We provide coverage to no "insureds" under this policy if, whether before or after

a loss, an "insured" has:
1. Intentionally concealed or misrepresented any material fact or circumstances;
2. Engaged in fraudulent conduct; or
3. Made false statements;

relating to this insurance.

(Insurance Policy at 11, 14; Special Provisions at 1.) Tragically, Hargis's home and its contents were destroyed by fire on December 9, 2007. (Compl. ¶ 11; Answer ¶ 11.)

There is no dispute that this homeowner's insurance policy was in force at the time of the loss. Rather, State Auto brought this action in the Henderson Circuit Court[1] seeking a declaration that it owes no duties to Hargis under the policy because she breached its intentional loss and fraud provisions. It argues that there is sufficient circumstantial evidence to show that Hargis set fire to her own home and that she misrepresented her ownership of property that was destroyed in the fire, each rendering the insurance policy void.[2] Hargis, on the other hand, denies these allegations and has asserted a counterclaim for breach of contract and bad faith. Hargis has now moved for summary judgment.

## II. SUMMARY JUDGMENT STANDARD

In order to grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories and affidavits, establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.

---

[1] This action was subsequently removed to this Court by Hargis pursuant to 28 U.S.C. § 1441.

[2] Under Kentucky law, claims of arson and misrepresentation are affirmative defenses upon which the insurer bears the burden of proof at trial. J.C. Penney Ins. Co. v. Varney, 853 F.2d 926 (table), 1988 WL 82351, at *1-*4 (6th Cir. 1988) (applying Kentucky law).

R. Civ. P. 56. The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Co., 475 U.S. 574, 586 (1986). The Rule requires the non-moving party to present "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

### III. DISCUSSION

Hargis has moved for summary judgment on her claim for breach of contract and on State Auto's claim for declaratory relief arguing that she is entitled to judgment as a matter of law as "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c)(2). In particular, Hargis contends that "State Auto has produced no evidence whatsoever . . . that [she] either personally set the fire or caused it to be set" and that it has produced no evidence "that [she] has committed any sort of fraud within the meaning of the insurance policy's terms and

3

conditions so as to permit it to avoid coverage."[3] (Mot. Summ. J. at 2.)

## A. ARSON

Contrary to Hargis's position, it is unnecessary for State Auto to produce direct evidence that Hargis, or someone on her behalf, set fire to her home. In fact, "it is rarely 'possible to prove the actual lighting of the match.'" Arms v. State Farm Fire & Cas. Co., 731 F.2d 1245, 1249 (6th Cir. 1984) (quoting Klein v. Auto Owners Ins. Co., 39 F.R.D. 24, 26 (D. Minn. 1965)). Instead, "'courts have long recognized that [arson] can be established in civil cases by circumstantial evidence.'" Id. (quoting Elgi Holding, Inc. v. Ins. Co. of N. Am., 511 F.2d 957, 959 (2d Cir. 1975)); Twin City Fire Ins. Co. v. Lonas, 255 Ky. 717, 722-23, 75 S.W.2d 348, 350-51 (1934). And in Kentucky, the insurer need only prove arson by a preponderance of the evidence, J.C. Penney, 1988 WL 82351, at *4, which requires "'[1] evidence of arson and [2] financial motive plus [3] some other circumstance tending to cast suspicion upon the insured,'" Campbell v. State Farm Fire & Cas. Co., 865 F.2d 256 (table), 1988 WL 134522, at *2 (6th Cir. 1988) (quoting Arms, 731 F.2d at 1249); see also Paul v. Aetna Cas. & Surety Co., 831 F.2d 1064 (table), 1987 WL 38865, at *2 (6th Cir. 1987) ("To establish an arson defense, the insurer need only show that the fire was of incendiary origin and that the insured had both motive and opportunity to set it.").

Here, State Auto has produced sufficient circumstantial evidence from which a jury could infer that Hargis set fire to her own home. First, both parties agree that the fire that destroyed

---

[3] Because it is undisputed that a valid insurance policy was in force at the time of the loss, Hargis additionally argues that she is entitled to summary judgment on her claim for breach of contract in the event that State Auto's affirmative defenses fail as a matter of law.

her home its contents had an incendiary origin. See Mot. Summ. J. at 2 (acknowledging that "[t]here is no question but that Ms. Hargis's home was destroyed by arson."). There is also evidence that Hargis had an opportunity to set fire to her home; she was in the area throughout the day of the fire, (EUO at 87-93 (discussing activities on day of fire),) she was the only person who had a key to the home, (Id. 111:19-21,) and, as far as she is aware, she was the last person in the house before the fire started, (Id. 112:25-113:4.) Furthermore, nobody was scheduled to be in the home the evening of the fire. Hargis's daughter spent the day and evening with her grandmother, (Id. 94:7-21,) Hargis's son spent the weekend with his father, (Id. 90:1-3,) and Hargis's boyfriend spent the day in Bloomington, Indiana at a basketball game, (Id. 87:17-88:18.)[4]

The only remaining question, then, is whether State Auto has produced sufficient evidence of a motive for Hargis to commit arson. In Arms, the Sixth Circuit concluded that a financial motive was sufficient to satisfy this element of an arson defense. Arms, 731 F.2d at 1250. There, the insureds were "pretty well strapped financially." Id. at 1247. Because of a recent change in jobs, they moved to a new city and had to purchase a home there, they had to assume a mortgage on the new home, they had to borrow $11,000 on a six-month note, and they had to obtain additional funds by refinancing the mortgage on their old home at a high interest

---

[4] The parties discuss a CD which purportedly shows Hargis entering and leaving the Scores strip club in Evansville at the time of the fire. State Auto notes that it has never received a working copy of the CD and, therefore, cannot verify what the video depicts. Nor has a copy been submitted into the record. Nevertheless, the possibility that Hargis was not in the vicinity of her home at the time of the fire merely creates a jury question and, in any event, "'does not rule out a reasonable inference . . . that [the insured] had procured someone else to set the fire.'" Arms, 731 F.2d at 1250 (quoting Gregory's Continental Coiffures & Boutique, Inc. v. St. Paul Fire & Marine Ins. Co., 536 F.2d 1187, 1191 (7th Cir. 1976)).

5

rate. Id. They intended to make a quick sale on their old home, but quickly fell into arrears on the mortgage. Id. at 1247. When a listing agreement with a real estate agent to sell their home expired, they did not renew it, as there was no prospect for selling the home. Id. Shortly thereafter, the home was destroyed by fire. Id. The trial court directed a verdict in favor of the insureds at the close of the evidence concluding that "[y]ou can stretch it and say they had a motive, but did they follow through with the motive. There is no evidence that they did at all." Id. at 1248. The Sixth Circuit reversed and concluded "that a reasonable jury could find State Farm's inference that the Arms caused the fire to be more plausible than the contrary inference that some unknown person caused the fire." Id. at 1251.

State Auto has presented similar evidence that Hargis was suffering financially at the time of the loss. Hargis acquired the home through a divorce. She put the home on the market shortly after the divorce with her ex-husband was finalized, and it had been on the market for approximately 18 months prior to the fire. (EUO 13:2.) She listed the property with two real estate agents, but received no offers to purchase the property. (Id. 30:4-6.) She put the home on the market because she wanted to move back to Evansville to be closer to her family. (Id. 30:13-17.) At the time of the fire, she had fallen approximately $10,000 in arrears on her monthly mortgage payment of $2,700. (Id. 64:4-12.) At the time of the fire, she had also accumulated considerable credit card debt, (DN 44, Exs. D, E, & G,) had been late making her monthly credit card payments, (Id.,) had been late making her payments on her car loan, (DN 44, Ex. B,) and had been late making utility payments, (DN 28, Ex. E.) In addition, her gross receipts from her business of $36,169 in 2007, the year of the fire, was considerably less than

6

her gross receipts of $100,254 the year prior. (DN 28, Exs. N & P.) Suffice it to say that a reasonable jury could find that Hargis was "financially strapped" at the time of the fire, giving her motive to set her home ablaze.

Hargis points out that it is not unusual for her to have considerable debt and that it in fact makes her like most other Americans. She contends there is nothing about the debt that makes it any more likely that she committed arson. To the contrary, it is because Hargis was in debt at the time of fire, was unsuccessfully trying to sell the property, and had little disposable income to pay off her debts from which a jury could infer that Hargis had a motive to commit arson. See, e.g., Mathis v. Allstate Ins. Co., 959 F.2d 235 (table), 1992 WL 70192, at *3 (6th Cir. 1992) (evidence that "the [insured's] bank account was depleted; their residence was still on the market after 18 months; their credit card balance exceeded $12,000; they had just begun to make monthly car payments," among other things, was sufficient to show financial motive).

Citing Hayseeds, Inc. v. State Farm Fire & Cas. Co., 352 S.E.2d 73 (W. Va. 1986), a West Virginia case, Hargis argues that State Auto's evidence should be "clear and strong enough to preponderate over the general and reasonable presumption that men are honest and do not ordinarily commit fraud, or act in bad faith . . . ." Hayseeds, 352 S.E.2d at 77. But a similar argument was rejected in Arms. There, the trial court, in granting a directed verdict for the insureds, commented: "All the insurance company showed was [the insureds] were in a tight financial position at the time. That doesn't say they went out and burned the house down. People don't do that. They survive. They don't have to go and burn houses down . . . ." Arms, 731 F.2d at 1250 n.4. The Sixth Circuit found that this conclusion "intruded upon the jury."

7

Id. "Determining how persons react to a given situation is a function uniquely appropriate for the jury." Id. Hargis correctly points out that "circumstantial evidence has to be both probative and sufficient to make a jury finding of arson reasonable." Mot. Summ. J. at 6; see also Lonas, 255 Ky. at 722-23, 75 S.W.2d at 350 (citation omitted) ("The rule that neither a court nor a jury is authorized to indulge in speculation or guesswork does not forbid the admission nor destroy the weight of circumstantial evidence. The proof of facts or circumstances from which it can be properly inferred with reasonable satisfaction to the mind that the act sought to be established occurred or was committed is sufficient to authorize the submission of an issue to the jury.") . In this case, a reasonable jury could make a finding of arson as State Auto has produced evidence that the fire had an incendiary origin, and that Hargis had both the motive and opportunity to commit arson. The Court will therefore deny Hargis's motion for summary judgment.

### B. MISREPRESENTATION

The Court also finds that there is a sufficient genuine issue of fact for trial as to whether Hargis committed fraud during the proof-of-loss stage of her insurance claim. The fraud provision of Hargis's policy "'is common to most fire insurance policies and is uniformly held valid so that it will defeat a recovery under the contract if false statements in proof of loss were intentionally made and disclose a purpose to fraudulently overvalue the property or include non-existent items.'" Home Ins. Co. v. Hardin, 528 S.W.2d 723, 725 (Ky. 1975) (quoting World Fire & Marine Ins. Co. v. Tapp, 279 Ky. 423, 426, 130 S.W.2d 848, 849-50 (1939)). State Auto's primary contention is that an individual with Hargis's income cannot afford $28,000

8

worth of purses, $5,000 worth of sweatshirts, $6,000 worth of sweaters, $10,000 worth of Victoria's Secret tops, $8,000 worth of shorts, and $30,000 worth of shoes, all primarily claimed to have been acquired within the two or three year period prior of the fire. (DN 28, Ex. D.) On her 2006 federal tax return, for example, although Hargis claimed $100,254 in gross receipts from her business, after expenses she claimed a profit of only $13,131 and a negative adjusted gross income. (DN 28, Ex. N.) On her 2007 return, she claimed $36,169 in gross receipts from her business, but only a net profit of $16,547, and an adjusted gross income of $7,713. (DN 28, Ex. P.)

From these facts a jury could infer that Hargis did not purchase all of these items. In fact, Hargis does not contend that she purchased all the items. In her affidavit and in her examination under oath, she states that many of the items were gifts from friends or family and that she acquired the items over a significant period of time. (DN 30, Ex. A.) This may be true, but to credit Hargis's testimony would require the Court to weigh her credibility, which is improper on a motion for summary judgment. Schreiber v. Moe, 596 F.3d 323, 333 (6th Cir. 2010) ("[i]n reviewing a summary judgment motion, credibility judgments and weighing of the evidence are prohibited."). It is for the jury to determine whether Hargis acquired the claimed items by gift or otherwise, and therefore, summary judgment is inappropriate.

### C. BREACH OF CONTRACT

A finding that there is a genuine issue of material fact on State Auto's affirmative defenses of arson and misrepresentation, precludes Hargis's motion for summary judgment on her claim for breach of contract. If the jury should return a verdict in favor of State Auto on its

claim for declaratory relief and its affirmative defenses, then Hargis's claim for breach of contract would likely fail.

## IV.  CONCLUSION

Accordingly, the motion by the defendant, Lori Hargis, for summary judgment [DN 27] is **DENIED**.


cc:     Counsel of Record